UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. <u>02-20637-CR-MARRA</u>

UNITED STATES OF AMERICA

v.

LAWRENCE GALLO,

          Defendant.

_____/

## GOVERNMENT'S EMERGENCY MOTION FOR PRE-TRIAL <br> RESOLUTION OF POTENTIAL CONFLICT OF INTEREST

The United States has recently discovered what may be a serious potential for conflict of interest – if not an actual conflict of interest – on the part of Joel Hirschorn, Esq., counsel for defendant Lawrence Gallo. The government believes that this conflict must be addressed and resolved before trial; otherwise, a re-trial may be required.[1]

### The Conflict

During the last two days, the government has learned that defendant Gallo has defrauded at least one of his investors in order to pay his defense counsel's legal fees. Indeed, Gallo has defrauded that investor and induced him to wire transfer $65,000 directly into Gallo's counsel's bank account.

Significantly, this issue is not a new one for this defendant. In September 2003, at least five

---

[1] As noted below, the government has learned of the nature and scope of this conflict, if only in part, in the last 48 hours. With trial set to begin Monday morning, the government wanted to give the court and counsel an opportunity to consider this issue before that time. Thus, this motion may be supplemented later.

1



investors in UMDA were instructed to wire money to purchase stock in UMDA to Richard Rosenbaum, Esq. At the time, Mr. Rosenbaum was representing Gallo in the instant case. Several of those investors were told, among other things, that in order to purchase stock in UMDA they should wire their money to Mr. Rosenbaum who, according to the defendant, was representing the company. They were not told that Gallo was under indictment in this district, or that the money they were to wire was to be used to pay for his personal criminal defense. Nor was Mr. Rosenbaum told by Gallo that money would be wired into his trust account by individual investors. One of the investors contacted Mr. Rosenbaum, and asked whether Mr. Rosenbaum was holding his stock options. Mr. Rosenbaum, recognizing the ethical and legal issues implicated by accepting these fees, returned them to the investors and withdrew from Gallo's representation.

Significantly, when the defendant's present counsel, Mr. Hirschhorn, took over the case, Mr. Rosenbaum informed Mr. Hirschhorn of this incident. Gallo, for his part, caused UMDA to issue what was referred to as "apology stock" to these investors after Mr. Rosenbaum returned the money to them.

In the early part of this year, during a review of UMDA's transfer records (which show, among other things, issuances of stock by the company), the undersigned noted that Mr. Hirschhorn had received 2 million restricted shares of UMDA stock. The undersigned later spoke to Mr. Hirschhorn about this, and counsel stated that Gallo had represented that these were his personal shares. After pointing to the records showing that these were shares issued by the company, and not from Gallo's personal holdings, Mr. Hirschhorn, apparently after speaking with Gallo, indicated that Gallo was now representing that these were shares that the company owed to him.

In the last two weeks, the undersigned learned that at least two investors sent money to Mr.

2

Hirschhorn to pay for Gallo's defense. One investor, when interviewed, seemed relatively aware of the purpose for those funds. However, as the government has learned only in the last 48 hours, the other investor, who appears to have wired $65,000 directly to Mr. Hirschhorn's trust account, was unaware that his money was to be used to pay for Gallo's criminal defense.[2] Indeed, he appears to have been unaware that Gallo had any outstanding legal issues, having been informed that Gallo had cleared everything up with the SEC some time prior to the Fall of last year. He was, to the contrary, under the impression that the money, for which he was to receive UMDA stock, was to help the company purchase software licenses and other things that it needed to operate. He did not know the money was for Gallo's personal use, nor did anyone from Mr. Hirschhorn's office contact him to determine why he was wiring money to them. He was also induced to make this investment in UMDA, as he believed it to be, based on other affirmative misrepresentations about the company and its prospects by Gallo. This investor is one of the group that previously sent money to Mr. Rosenbaum. Accordingly, with regard at least to this $65,000, this money is the proceeds of fraud, and is, at a minimum, civilly

Because of the significant possibility that Gallo may later claim that his lawyer's receipt of these funds, with the attendant risks thereto, created a conflict which he will then argue requires a new trial, the government believes that this issue must be dealt with prior to the start of trial. forfeitable.

Counsel for defendant now likely suffers from the serious potential for a conflict of interest, or an actual conflict, and this conflict may not be amenable to waiver. First, there is the argument

---

[2]     The government learned these facts during a telephonic interview on the evening of July 14, 2004.

that Gallo will surely make in a § 2255 setting that because at least part of his fee for this representation is potentially subject to forfeiture, Mr. Hirschhorn will try to curry favor with the government by rendering ineffective assistance to Gallo. Mr. Hirschhorn himself is inexorably conflicted as a result of his client's efforts to involve him in this fraud. If he takes the position that Gallo represented to him that the money was wired after full disclosure was made to the victims, he becomes a witness against Mr. Gallo in any criminal action that may arise therefrom. *Cf.* R. Regulating Fla. Bar 4-1.8(f) ("A lawyer shall not accept compensation for representing client from one other than the client unless: (1) the client consents after consultation..."). If Mr. Gallo testifies, as is likely, this subject will surely arise on cross-examination, bringing Mr. Hirschhorn's conflict into high relief.[3] If, on the other hand, Mr. Hirschhorn's position is that he received the funds without any representation from Mr. Gallo, he will have a much harder time keeping these fees, among other things, as he cannot fairly be said to have relied on Mr. Gallo's representations about the lawful genesis of these fees. *Cf. United States v. Hobson,* 672 F. 2d 825 (11th Cir. 1982); *United States v. Fulton,* 5 F. 3d 605 (2nd Cir. 1993); *see also Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617 (1989).[4] Thus, Mr. Hirschhorn's economic interest in keeping his fee is arguably better served by serving up his client to potential criminal sanction by the government. *See United States v. Reckmeyer,* 631 F. Supp. 1191, 1197 (E.D. Va. 1986) ("[t]he many conflicts of interest created by

---

[3]    Mr. Hirschhorn will also be forced to decide whether to violate the "advocate-witness" rule to correct whatever his client may say about what he told Mr. Hirschhorn about the wiring of this money, if his client testifies falsely about those discussions. *See United States v. Hosford,* 782 F. 2d 936, 938 (11th Cir. 1986).

[4]    In any event, given that Gallo's prior counsel informed Mr. Hirschhorn about Gallo's earlier shenanigans, it is unlikely that Mr. Hirschhorn can claim that it was reasonable to rely upon Gallo's representations.

the attorney having a pecuniary interest in the outcome of a criminal case would almost certainly deny the defendant his unqualified right to effective assistance of counsel.") (quoted in *United States v. Hill*, 935 F. 2d 1288 (4th Cir. 1991) (unpublished)).[5] Further, Gallo will surely later assert that Mr. Hirschhorn was also concerned about potential criminal liability arising out of his acceptance of these fraud proceeds, and will argue that this, in addition to his desire to keep the fee, led him to be an ineffective advocate. In any event, the Court and the government are placed, by Gallo's conduct here, in the impossible position of having to proceed with this case, knowing that there is the very real possibility that Gallo's efforts to obtain a new trial later, should he be convicted, may succeed. Neither should have to endure that burden. *See  United States v. Register*, 182 F.3d 820, 828-32 (11th Cir. 1999), *cert. denied*, 530 U.S. 1250 *and* 121 S.Ct. 123 (2000) (noting that conflicts of interest involving defense counsel often place the government and the court in "no-win" situations).

The United States Court of Appeals for the Eleventh Circuit has "consistently held that while the right to counsel is absolute, there is no absolute right to counsel of one's own choice." *United States v. McCutcheon*, 86 F.3d 187, 189 (11th Cir. 1996); *see United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994), *cert. denied*, 515 U.S. 1132 (1995); *see also Wheat v. United States*, 486 U.S. 153, 159 (1987). Indeed, "the right to a choice of counsel is subordinate to the requirements of the efficient and orderly administration of justice." *McCutcheon*, 86 F.3d at 189; *see also Wheat*, 486 U.S. at 160 ("Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."); *Ross*, 33 F.3d at 1523.

---

[5]      Such circumstances could also be said to impermissibly hinder Mr. Hirschhorn's required exercise of independent professional judgment on behalf of his client. *See* R. Regulating Fla. Bar 4-1.7(b); *cf.* R. Regulating Fla. Bar 4-5.4(d).

Where a defendant's chosen counsel is faced with a conflict of interest, whether actual or potential, he may properly be disqualified from continuing to represent that defendant because counsel's divided loyalties may preclude the effective representation of the defendant. *See Register*, 182 F.3d at 828-32; *McCutcheon*, 86 F.3d at 189; *Ross*, 33 F.3d at 1523; *see also Wheat*, 486 U.S. at 163 (noting that both actual conflicts and serious potential for conflict can justify disqualification of defendant's chosen attorney). Indeed, allowing a conflicted attorney to continue representing a defendant creates a risk that the attorney could be deterred from conducting a full and vigorous evidentiary presentation or examination of a witness in order to protect the relationship, individual, or entity that gives rise to the conflict of interest. *See, e.g., Ross*, 33 F.3d at 1523; *Register*, 182 F.3d at 832. In such a situation, absent disqualification, the results of a criminal proceeding could be rendered suspect and laid open to collateral attack on the basis of an ineffective assistance of counsel claim. *See McCutcheon*, 86 F.3d at 189; *Ross*, 33 F.3d at 1524; *see also Wheat*, 486 U.S. at 161-63. Failure to address the issue may undermine the courts' "independent interest in ensuring . . . that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160.[6]

Accordingly, a district court is given broad latitude to evaluate an alleged conflict of interest, whether actual or potential, and to determine whether, in the court's discretion, disqualification of the defendant's chosen counsel is warranted. *See Wheat*, 486 U.S. at 162-63; *McCutcheon*, 86 F.3d

---

[6]     The alternative is for the Court to seek a waiver from Gallo based on a hearing pursuant to *United States v. Garcia*, 517 F. 2d 272 (5th Cir. 1975) and *United States v. McLain*, 823 F. 2d 1457 (11th Cir. 1987). However, as noted above, it is likely that this conflict cannot be waived. Where a court finds an actual conflict of interest, or the serious potential of one, it may decline a proffered waiver. *Wheat*, 486 U.S. at 161-62. "Such is the case when a vigorous defense might bring forward the attorney's own criminal liability," *United States v. Matta-Timmins*, 81 F. Supp. 2d 193, 195 (D. Mass. 2000) (citing *United States v. Saccoccia*, 58 F. 3d 754, 772 (1st Cir. 1995), as Gallo will surely argue, at a later time, was the case here.

at 189-90.[7]

WHEREFORE, the United States respectfully requests that the Court resolve whatever

conflicts arise from Mr. Hirschhorn's representation of Gallo prior to the start of trial.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
United States Attorney

By: _____
for  DAVID M. BUCKNER
Assistant United States Attorney
Florida Bar No. 060550
99 N.E. 4th Street
Miami, Florida 33132-2111
Tel (305) 961-9210
Fax (305) 530-6168

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by facsimile

and mail this 16th day of July, 2004 to:

Joel Hirschhorn, Esq.
Hirschhorn & Bieber, P.A.
Douglas Center, Penthouse One
2600 Douglas Road
Coral Gables, Florida 33134

_____
for  David M. Buckner

---

[7]   Notably, a district court's decision to disqualify a defendant's chosen counsel due to an actual or potential conflict of interest is reviewed for abuse of discretion, viewing the situation as it existed at the time of the decision. *See, e.g.*, *Wheat*, 486 U.S. at 164; *McCutcheon*, 86 F.3d at 189; *Ross*, 33 F.3d at 1523.